Kevin W. Goering
NORWICK SCHAD & GOERING
110 East 59th Street
New York NY 10022
(917) 841-8750
kgoering@norwickschad.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SHOSHANA ROBERTS,                                    Civil Action No. 15 Civ. 10167

                                        Plaintiff,

          -against-                                  **AMENDED COMPLAINT FOR
                                                     DAMAGES FOR BREACH OF
                                                     CONTRACT, QUANTUM MERUIT
ROB BLISS, ROB BLISS CREATIVE, LLC,                  AND VIOLATIONS OF THE
HOLLABACK! INC., TGI FRIDAY'S INC.,                  LANHAM ACT AND THE RIGHT OF
MADE MOVEMENT LLC,                                   PUBLICITY**


                                                     **JURY TRIAL DEMANDED**


                                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


          Plaintiff, by and through her undersigned attorney, as and for her Complaint

herein, alleges as follows:



                              NATURE OF THE ACTION


          1.      This case arises out of the making and subsequent use of a video

that "went viral" on the Internet in late October 2014.  The Plaintiff is a young,

aspiring actress named Shoshana Roberts.  Soon after graduating from college, she answered an ad on Craigslist soliciting an actress to appear in a public service announcement or "PSA" on street harassment of women.  Plaintiff agreed to participate in the project without upfront compensation based on various misrepresentations, including (1) that "nobody was being paid for their work" on the project and (2) that the video was going to be used as a non-commercial PSA. She was not told that Defendant Bliss intended to peddle the video to advertisers such as TGI Friday's who would modify the work and use it to promote their collateral products.  Bliss told Plaintiff she should be happy to work for the publicity but that he would pay her if the project were somehow successful enough to permit it.

2.      What was created was not a public service announcement at all but, rather, a commercial video (the "Video") which was used initially to raise money for a Brooklyn charity known as Hollaback!.  Thereafter, the Video "went viral" and enriched an individual named Rob Bliss of Grand Rapids Michigan who had the idea for the project.  Google/YouTube profited from a partnership with Bliss pursuant to which it split advertising revenues generated by the Video with him. Other Internet based entities such as Facebook, Reddit, Twitter and Mashable also profited from advertising associated with the Video which appeared on their sites.

3.      Later, without Plaintiff's knowledge or authorization,  Bliss licensed the Video for commercial purposes to Defendant Made Movement, an advertising  agency. Working with Made Movement, the national restaurant chain TGI Friday's used the video, including Plaintiff's persona and original creative content, to create a television advertisement for its food products.

Plaintiff has never signed any release or written contract of any kind relating to the Video or its use.

4.     After playing a substantial role in creating this Video which has generated substantial revenues for many other people and entities, Plaintiff complained to Bliss that she was not being compensated. In the end, the only thing she has received is a $200 "stipend" from the charity which she did not ask for and certainly did not agree to accept as just compensation for her work on the video and the subsequent commercial use of her persona and creative content.

5.     The Internet has caused a fundamental change in public behavior and in the creation, use and compensation for content. This case raises important legal issues relating to performance and image rights which are protected by various state and federal laws and by international treaties to which the United States is a party.

6.     Plaintiff actively promoted the Video and its message to the benefit of the defendants herein and received nothing in return except an unsolicited check for $200 from Hollaback!.   The TGI Friday's ad campaign was the humiliating last chapter in the story. TGI Friday's and its ad agency essentially dressed Plaintiff up as a mozzarella stick and used her to sell potato skins and pot stickers.   Like many unsophisticated young actors and other content creators, Plaintiff was exploited and brought this action to obtain just compensation for her work and for the commercial use of her image, performance and persona.

7.     Plaintiff's counsel commenced this action by filing a simple summons with notice in the New York County Supreme Court. The very filing of the summons immediately generated substantial attention in news reports and

3

on the Internet, many of which criticized Plaintiff yet again, this time for seeking compensation from those who profited from her work.  For their part, the defendants retained prominent counsel and removed the case to federal court. They then promptly filed extensive motions to dismiss the complaint without discovery. Plaintive then opted to amend her complaint as set forth herein to conform it to Federal practice and to clarify some of her factual and legal allegations.

### THE PARTIES

8.    Plaintiff Shoshana Roberts ("Plaintiff") is an individual residing in Queens New York. Plaintiff is a professional actress.

9.    Defendant Rob Bliss is an individual residing in Grand Rapids, MI.

10.    Defendant Rob Bliss Creative, LLC is a Michigan limited liability company with its principal place of business in Michigan. It has a business address at 50 Louis Street NW, Grand Rapids, MI 49503. Upon information and belief, Rob Bliss Creative is the alter ego of Rob Bliss.  Both defendants are collectively referred to herein as "Bliss" unless the context indicates otherwise.

11.    Defendant Hollaback! Inc. is a New York not-for-profit corporation with a principal place of business in Brooklyn, NY. It has a business address at 30 Third Avenue, Brooklyn, NY 11217.

12.    Defendant Made Movement LLC is a Colorado limited liability company with its principal place of business in Boulder, CO. It has a business address at 200 Pearl St. Boulder, CO 80302.

4

13.     Defendant TGI Friday's Inc. is a New York corporation with its principal place of business in Carrollton, TX.  It has a business address at 4201 Marsh Lane Carrollton, TX 75007.

JURISDICTION AND VENUE

14.     The complaint herein was originally filed in the New York County Supreme Court. Plaintiff alleged that the State Court had personal jurisdiction over each of the defendants pursuant to CPLR 301 and 302 in that they are either present and doing business in this state, transacted business here or committed tortious acts within the state or tortious acts outside the state causing harm in this State.

15.     The defendants timely removed the case to this Court on December 31, 2015.  Defendants contend--and Plaintiff concedes--that this Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338 because Plaintiff's Complaint alleges a claim for relief against all defendants which arises under the United States Trademark Act of 1946 (Lanham Act § 43(a), 15 U.S.C. § 1125(a)). Defendants assert that this Court may exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) with respect to the remaining claims asserted in Plaintiff's Complaint.

16.     Defendants assert—and Plaintiff concedes-- that venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this jurisdiction.

FACTUAL ALLEGATIONS

17.    On September 12, 2014, Plaintiff responded to a solicitation posted by Bliss on Craigslist. Bliss was searching for an actress to appear in what he called a public service announcement or "PSA" regarding street harassment of women. Bliss's idea was to have Plaintiff walk around New York City in normal dress and record the responses she received from passersby.

18.    Plaintiff responded that she was interested in the project and submitted photographs of herself to Bliss. After talking by telephone and exchanging emails and text messages, Bliss indicated his strong desire to have Plaintiff involved.  Plaintiff and Bliss then met in New York City on September 29, 2014.

19.    During their initial meeting in Times Square in New York City, Bliss told Plaintiff for the second time that "nobody was being paid" for the project.   That representation was knowingly false and fraudulently induced Plaintiff to participate in the project with no guaranteed compensation.  Bliss further represented to Plaintiff, however, that he hoped the video would "make it big" on the Internet and that, if it did, he would be able to compensate her.   He did not tell Plaintiff that he intended to use her image on his website to advertise his business and to sell or license the Video for commercial purposes such as the TGI Friday's ads at issue herein.

20.    Plaintiff and Bliss discussed how to create the Video.  There was no script for the project.  Bliss had a "Go Pro" camera he had purchased.  Plaintiff decided how to dress for the project.  She then actively assisted Bliss in deciding how and where to walk, and how to film without the camera being noticed. Plaintiff at all times used her skills as an actress to create a realistic impression of

6

an ordinary woman walking on the streets of New York.  The initial scene in the Video itself shows Plaintiff assisting with the placement of the camera.

21.     On September 29 through October 1, 2014, Plaintiff and Bliss walked throughout New York City and filmed the reactions and comments of strangers on the street.  Plaintiff was the only "talent" to appear in the Video.

22.     Bliss then returned to Michigan and he and a friend of his edited the footage into the one minute and 56 second Video which was entitled "10 Hours Walking in NYC as a Woman."  When it first appeared in late October 2014 on YouTube, Plaintiff had not seen it and was not aware that it would contain a solicitation for contributions to Hollaback!.  As of this date the video may be accessed at:  http://youtu.be/b1XGPvbWn0A.  Plaintiff hereby incorporates by reference the Video and all of its content.

23.     Bliss posted the Video to YouTube on or about October 27, 2014.  It appeared with his name prominently featured as well as third party advertising placed by YouTube. Bliss immediately posted the video on his website and prominently used Plaintiff's image for advertising purposes.   Within days, millions of people had accessed the Video on YouTube and via other websites and Internet Service Providers.

24.     In late October and early November 2014, Plaintiff was inundated with requests for comment by the mainstream media. Plaintiff quickly became widely known throughout the United States and the world because of the Video.

25.      On October 28, 2014, Bliss stated to one media representative that Plaintiff "was the star of the video, I was the one who came up with the concept and directed/produced it all with her."

26.     On November 19, 2014, Plaintiff sent an email to Bliss noting that "we didn't have a written contract, but I do remember you saying that you hoped this video would make it big and that you could pay me. She asked him to "use [his] judgement to determine what [he] thought was fair."  Bliss refused to pay Plaintiff anything and responded that only *he* should "get the revenue."  In fact, the Video did "make it big," and Bliss did receive substantial revenue.

27.     Plaintiff was later surprised to learn that Hollaback! had in fact entered into an agreement with Bliss and had even paid him for the creation of the Video.  Hollaback!'s Board of Directors eventually agreed to give Plaintiff $200 out of money they allegedly owed to Bliss. On November 26, 2014, Hollaback! sent Plaintiff a check for $200 for a "PSA." Plaintiff had not demanded the $200 check and did not intend to accept it as full compensation for what she then believed may have been owed for her work and the use of her persona. Plaintiff was a young actress who was not then represented by counsel.

28.     Plaintiff does not disagree with the message conveyed by the original Video.  In fact, she heartily approves of Hollaback! 's mission and its efforts to fight street harassment.  That does not mean Hollaback! should be allowed to use her image, persona and creative content without paying her a reasonable compensation.

29.     Plaintiff was sought out for interviews and participated in them even as she was being criticized and even threatened by some  who found the video unfair to men and persons of color.  Plaintiff received death and rape threats but continued to appear in public interviews all of which inured to the financial benefit of Bliss and Hollaback!.

30.     Over 41 million people have viewed the Video on Bliss's YouTube channel alone. Upon information and belief, millions of others have seen it through social media, including Facebook and Twitter, and because they received copies of it or Internet links to it from friends and family.  The Video, its message and Plaintiff herself became a topic of debate and conversation around the world. Plaintiff became a public figure and a celebrity virtually overnight.

31.     Bliss's name is still listed on the YouTube page, and Bliss has continued to use Plaintiff's image to promote his business.  Bliss has a partnership agreement with YouTube whereby he receives 30% of the ad revenue generated by the Video.

32.     Although Plaintiff was happy to promote the original video and its message, all of that changed when she suddenly learned that Bliss, Made Movement and  TGI Friday's had modified her image by superimposing French fries and mozzarella sticks over her face and using her creation to advertise appetizers in a way that belittled women and the very cause which Plaintiff was promoting.

33.     On February 18, 2015, Bliss entered into a "video license" agreement with defendant Made Movement LLC, an advertising agency in Boulder Colorado. A copy of that agreement is annexed hereto as exhibit A and incorporated by reference herein.  In that contract, Bliss represented that he had the "sole right and authority" to grant all the rights to the Video, including the right to use all images in it.

34.     Made Movement and defendant TGI Friday's prepared at least two television ads using the Video. The ads superimposed food products over Plaintiff's face but otherwise used the Video's images and content in their original form.  One of these advertisements can be accessed on the internet at http://time.com/3744418/tgi-fridays-catcalling-parody/.    At least one longer version of the advertisement was also produced.  These advertisements are hereby incorporated by reference as if fully set forth herein.

35.     The TGI Friday's advertisements generated a substantial amount of increased publicity and resulting revenue for the underlying Video, again to the benefit of Bliss, Hollaback!, Google and many others, but not Plaintiff.  Upon information and belief, a very substantial number of consumers were led to believe or understood that Plaintiff had authorized TGI Friday's to use her persona and creative content to advertise their appetizers, that she approved of the message contained in the ads and that she implicitly endorsed TGI Friday's appetizers.  Plaintiff will seek to establish these facts through discovery, expert testimony and consumer surveys.

36.     TGI Friday's, Made Movement, Bliss and Plaintiff were all heavily criticized for having commercialized the issue of street harassment by making the television ads.  TGI Friday's quickly discontinued the ads, but they remained available—and still appear today-- on the Internet.  Nonetheless, the increased publicity generated more ad revenues for the original Video to the benefit of Bliss, Hollaback!  and Google/YouTube.

37.     A substantial number of viewers of the TGI Friday's advertisement and commentary relating to it identified Plaintiff as having helped Bliss create the video and having appeared in it. Notwithstanding the widespread

commercial use of her identity, the only money Plaintiff has received as a result of her participation in and creation of the video is the unsolicited $200 check she received from Hollaback!.


FIRST CLAIM FOR RELIEF

BREACH OF CONTRACT AND COVENANT OF GOOD FAITH AND FAIR DEALING

(against Bliss and Hollaback!)


38.     Plaintiff incorporates herein by reference all allegations contained in paragraphs 1 through 37 above as if fully set forth herein.

39.     By virtue of Bliss's conduct, including his misrepresentations and omissions set forth above, a contract between the parties existed or should be implied. Bliss promised to pay Plaintiff reasonable compensation if the success of the video permitted it.

40.     Unbeknownst to Plaintiff, Hollaback! had an agreement with Bliss whereby it would finance the video in whole or in part and would use it for fundraising while Bliss would be free to use it for all other commercial purposes. As such, Hollaback! shares contractual liability with Bliss.

41.     Plaintiff has duly performed or satisfied all conditions, promises and obligations required to be performed or satisfied by her in accordance with the terms and conditions of the contract.

42.     Bliss has failed to pay Plaintiff for the work she has performed, thereby breaching the parties' contract and his independent duty of good faith and fair dealing.

43.     As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages in an amount to be proven at trial.

SECOND CLAIM FOR RELIEF

VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125 (a) - Unfair Competition
(against all Defendants)

44.     Plaintiff incorporates herein by reference all allegations contained in paragraphs 1 through 43 above as if fully set forth herein.

45.     Plaintiff has exclusive ownership rights in her identity, name, likeness and persona.  Plaintiff's name, likeness and persona has attained considerable commercial value based on her participation in the Video, her public appearances thereafter and her other activities as an actress. Plaintiff has the right to ·compensation for the commercial use and distribution of her name, likeness and persona. Such use constitutes a misrepresentation as to source or origin of goods in interstate commerce and has caused and continues to cause a likelihood of consumer confusion in the marketplace.  Such conduct constitutes unfair competition in violation of 15 U.S.C. section 1125 (a).

46.     The TGI Friday's advertisements depicted Plaintiff's persona and conveyed the false impression to a substantial group of viewers thereof that she

had participated in, authorized or endorsed the advertisements.  Plaintiff did not license her identity and persona for use in the TGI Friday's advertisements and would never have done so as she disagrees with their objectionable content.

47.    As a direct and proximate result of Defendants' willful unfair competition, Plaintiff has suffered damages in an amount to be proven at trial. Plaintiff is also entitled to multiple damages and to her attorneys' fees pursuant to statute.

THIRD CLAIM FOR RELIEF
VIOLATION OF NY CIVIL RIGHTS LAW SECTIONS 50-51
(against all Defendants)

48.    Plaintiff incorporates herein by reference all allegations contained in paragraphs 1 through 47 above as if fully set forth herein.

49.    Plaintiff's picture appears throughout the Video.  Portions of her body remain visible in the TGI Friday's ads and a substantial number of viewers thereof would and did recognize it was Plaintiff dressed up to look like a walking mozzarella stick or a potato skin.

50.    Defendants have knowingly used Plaintiff's name, portrait, picture or voice for advertising purposes or for the purposes of trade without Plaintiff's prior written consent as required by New York Civil Rights Law sections 50-51. To the extent Plaintiff may be viewed as having orally consented to some uses of the Video after it was created, such consent was procured fraudulently.

51.    By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages in an amount to be proven at trial.

FOURTH CLAIM FOR RELIEF
VIOLATION OF RIGHT OF PUBLICITY
(against all Defendants)

52.     Plaintiff incorporates herein by reference all allegations contained in paragraphs 1 through 51 above as if fully set forth herein.

53.     Defendants have knowingly used Plaintiff's performance, likeness and persona for advertising or commercial purposes without Plaintiff's prior written consent as required by the statutory and common law of any state other than New York whose law is deemed by this court to be applicable to this case. To the extent Plaintiff may be viewed as having orally consented to some uses of the Video after it was created, such consent was procured fraudulently.

54.     In the age of the Internet, states other than those of a Plaintiff's domicile have a significant interest in the unlawful commercial use of intellectual property rights, including trademarks and rights of publicity, which is carried out in those states.

55.     Defendant TGI Friday's has a principal place of business in Texas, which recognizes a right of publicity which may be pursued by non-domiciliaries of that state.  Tex. Prop. Code Ann. Sec. 26.013.  Upon information and belief, TGI Friday's employees in Texas participated in the wrongful conduct alleged in this case.

14

56.     Defendant Made Movement has a principal place of business in Colorado, which recognizes a right of publicity through its common law which may be pursued by non-domiciliaries of that state.  Upon information and belief, Made Movement's employees in Colorado participated in the wrongful conduct alleged in this case.

57.     Plaintiff should be allowed to join her claims for violations of other state rights of publicity in one action in this Court rather than be forced to bring multiple lawsuits in various jurisdictions.

58.     By reason of the foregoing, Plaintiff has suffered damages in an amount to be proven at trial.


FIFTH CLAIM FOR RELIEF
QUANTUM MERUIT
(against Bliss and Hollaback!)


59.     Plaintiff incorporates herein by reference all allegations contained in paragraphs 1 through 58 above as if fully set forth herein.

60.      Plaintiff performed services at Defendants' request.

61.     Bliss, on his behalf and on behalf of defendant Hollaback!, promised he and Hollaback! would pay Plaintiff an appropriate amount to compensate her commensurate with the success of the Video.  Defendants have refused, and continue to refuse, to pay Plaintiff for her contribution.

62.     By reason of the foregoing, Plaintiff has suffered damages in an amount to be proven at trial.


### SIXTH CLAIM FOR RELIEF
UNJUST ENRICHMENT
(against all Defendants)

63.     Plaintiff incorporates herein by reference all allegations contained in paragraphs 1 through 62 above as if fully set forth herein. As a result of the conduct described above, defendants have been unjustly enriched at the expense of the Plaintiff.

64.     Plaintiff's creation of the Video and her substantial efforts to promote it conferred tangible financial benefits upon all of the defendants.  Bliss and TGI Friday's benefitted from ad revenues in a magnitude which will be established in discovery.  Hollaback! obtained donations to its cause in an amount presently unknown from the Video as a result of Plaintiff's promotional activities for which she was never paid.

65.     Defendants should be required to disgorge all monies, profits and gains which they have obtained or will unjustly obtain in the future at the expense of Plaintiff, and a constructive trust should be imposed thereon for the benefit of the Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment in her favor as hereinabove stated, for the costs of the action, for her reasonable attorneys' fees and for such other and further relief as the Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury of all issues so triable.

Dated:  New York, New York
             February 19, 2016

NORWICK, SCHAD & GOERING

By:  /s/ Kevin W. Goering
      Kevin W. Goering (KG 5859)
      110 East 59th Street
      22nd Floor
      New York, New York 10022
      Tel.: (917) 841-8750

      kgoering@norwickschad.com

      Attorneys for Plaintiff

17

# EXHIBIT A

# *Made*
## Video License

For good and valuable consideration, including payment to me of $4,000.00 USD, the sufficiency of which I hereby acknowledge, I hereby grant to TGIFridays, ("Client"), its agents (including, without limitation, Made Movement, LLC ("Agency"), and others working for them or on their behalf, and their respective parents, subsidiaries, affiliates, related entities, licensees, successors, and assigns (collectively, the "Permitted Parties"), the right and permission (but not the obligation) to use the video "Ten Hours Walking in NYC as a Woman" (the "Video"), edited or altered as the Permitted Parties so choose, together with any material the Permitted Parties so choose, to create the Materials (as defined below), which Materials may be used during the applicable Term, and in the Territory and Media (as such terms are defined below) and in any format, for purposes of advertising and trade in connection with Client and its products and services.

| | |
|---|---|
| Materials: | "Ten Hours Walking in NYC as a Woman" including without limitation, lifts, edits, tags and versions thereof. |
| Territory: | Worldwide |
| Media: | All uses without any limitations |
| Term: | In perpetuity |

I represent and warrant that: (1) I am the person who took the Video; (2) I have the sole right and authority to enter into this License and to grant all the rights and releases granted herein; and (3) the use of this Video in accordance with the terms of this License will not infringe on the rights of any third party.

I hereby irrevocably waive any and all so-called moral rights I may have in the Video and I agree that I shall have no right to inspect and approve the use of the Video in the Materials. I hereby forever release, discharge and hold harmless, the Permitted Parties from and against any and all claims related to or arising out of the Video, any use of the Video or the Materials. I agree that I shall not be entitled to seek injunctive or other equitable relief or to enjoin or restrain the distribution, exhibition, advertising, or any other exploitation of the Video or Materials for any reason.

I understand and agree that the content, nature and direction the Materials and any related advertising campaign is confidential and that the terms of this License are confidential. I, therefore, agree that I will not disclose in any manner (including, without limitation, via text messaging, blogging or communicating in any way via Twitter, Facebook, or any other social networking website, tool or device, etc.) any non-public information regarding the Materials or the related advertising campaign and I will not disclose any terms of this waiver to any third party.

This agreement contains the entire understanding between Client and me with respect to the subject matter hereof, may not be altered or waived except by a writing signed by both parties, and shall be governed by the laws of the State of Colorado, the United States of America, excluding its conflict-of-laws principles. Any action to enforce this agreement shall be brought exclusively in the state or federal courts located or having jurisdiction in Boulder County, Colorado, and I hereto irrevocably submit to the jurisdiction of such courts and agree to waive any objection that such courts are an inconvenient forum for the resolution of such action.

| | |
|---|---|
| *R.B.C.* | rob@ robbliss creative.com |
| Signature | Email Address |
| Rob Bliss | 2-18-15 |
| Name (Please Print) | Date |
| 227 Charles Ave | Grand Rapids, MI 49503 |
| Address | Address |

| | |
|---|---|
| If under 18, name of parent/guardian | Signature of parent/guardian |

Made Movement, LLC   200 Pearl Street   Boulder CO  80302