UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 1/24/2017
```

SHOSHANA ROBERTS,

                  Plaintiff,

v.

ROB BLISS, ROB BLISS CREATIVE, LLC, and TGI FRIDAY'S INC.,

                  Defendants.

No. 15-CV-10167 (RA)

ORDER & OPINION

RONNIE ABRAMS, United States District Judge:

    Plaintiff Shoshana Roberts, an actress, starred in a video highlighting street harassment of women that went "viral" and has been seen over 41 million times on the internet. Without her knowledge or consent, the video was licensed by the maker of the video, Defendants Rob Bliss and Rob Bliss Creative, LLC (collectively "Bliss"), to an advertisement agency, which used it to create an advertisement for Defendant TGI Friday's Inc. to promote its appetizers (hereinafter the "advertisement" or "ad"). The ad superimposes graphic images of life-sized appetizers over Plaintiff's entire image in the video. The appetizers are seen moving through the streets of New York City, with men shouting things like "Nice!" and "How you doing?" at the food, as they did to Roberts in the original video. The ads' message: "Nobody likes a catcaller . . . But who can blame someone for #Appcalling?"

    Roberts, "humiliate[ed]" by the ad that "belittled women and the very cause which Plaintiff was promoting," Am. Compl. ¶ 6, brings this action against Defendants for misleadingly implying

1

that she endorsed the TGI Friday's advertisement and its appetizers in violation of Section 43(a) of the Lanham Act, along with various state law claims. Defendants have moved to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Court agrees with Defendants that Plaintiff has failed to state a claim for false endorsement under the Lanham Act because she has not plausibly alleged that the advertisement contains a misleading representation that she endorsed a product, or that the ad is likely to cause consumer confusion as to her sponsorship of it. Because the Court dismisses all claims over which it has original jurisdiction, it declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

## I. BACKGROUND[1]

Roberts is a professional actress residing in Queens, New York. Am. Compl. ¶ 8. She is the subject of "10 Hours Walking in NYC as a Woman," a video that "went viral" on the internet in October 2014. Am. Compl. ¶ 22 (citing Rob Bliss Creative, *10 Hours of Walking in NYC as a Woman*, YouTube (Oct 28, 2014), https://www.youtube.com/watch?v=b1XGPvbWn0A) (hereinafter "10 Hours")). Roberts became involved in the project by responding to a solicitation posted by Bliss on Craigslist searching for an actress to appear in a public service announcement regarding street harassment of women. Am. Compl. ¶ 17.

10 Hours follows Roberts as she walks the New York City streets in black jeans and a black crew neck t-shirt. Am. Compl. ¶ 17, 21. Bliss used a hidden camera to film the comments, or "catcalls," directed at Roberts by strangers on the street between September 29 and October 1,

---

[1] The Court draws the following facts from the Amended Complaint, Dkt. 34, all of which it assumes to be true for purposes of this motion. *See, e.g., Fahs Constr. Grp., Inc. v. Gray,* 725 F.3d 289, 290 (2d Cir. 2013).

2014. Am. Compl. ¶ 21. Roberts asserts that she "actively assisted Bliss in deciding how and where to walk, and how to film without the camera being noticed. Plaintiff at all times used her skills as an actress to create a realistic impression of an ordinary woman walking through the streets of New York." Am. Compl. ¶ 20. After the filming, Bliss returned to his home in Michigan, and with a friend, edited the footage to create a one minute and fifty-six second video. Am. Compl. ¶ 9, 22. Bliss posted 10 Hours on YouTube on or about October 27, 2014. Am. Compl. ¶ 22. 10 Hours ends with a solicitation for contributions to Hollaback!,[2] which Roberts alleges she was unaware would be included. Am. Compl. ¶ 22. The video also "prominently features" Bliss' name and third-party advertising placed by YouTube, for which Bliss receives 30% of the advertising revenue. Am. Compl. ¶ 31.

The video has been viewed over 41 million times on Bliss' YouTube channel alone, and according to Roberts it made her "a public figure and celebrity virtually overnight." Am. Compl. ¶ 30. "Plaintiff was inundated with requests for comment by the mainstream media. Plaintiff quickly became widely known throughout the United States and world because of the Video." Am. Compl. ¶ 24. Plaintiff participated in interviews even though she received death and rape threats. Am. Compl. ¶ 29.

Roberts alleges that she was falsely told that "nobody was being paid" for their work on the video and that she was "induced" to "participate in the project with no guaranteed compensation." Am. Compl. ¶ 1, 19. Plaintiff also alleges that Bliss told her that "he hoped the

---

[2] Hollaback! is a not-for-profit organization involved in efforts to fight street harassment. Am. Compl. ¶ 28. Claims against Hollaback! Inc., which was originally a defendant in this action, have been voluntarily dismissed. Dkt. 58.

video would 'make it big' on the Internet and that, if it did, he would be able to compensate her." Am. Compl. ¶ 19. Bliss did not tell Plaintiff that he intended to use her image on his website to advertise his business or to sell or license the video for commercial purposes. Am. Compl. ¶ 19. On November 19, 2014, Plaintiff sent an e-mail to Bliss noting that "we didn't have a written contract, but I do remember you saying that you hoped this video would make it big and that you could pay me." Am. Compl. ¶ 26. Roberts asked Bliss to "use [his] judgment to determine what [he] thought was fair" compensation. Am. Compl. ¶ 26. Bliss refused to pay Plaintiff anything and responded that only he should "get the revenue." Am. Compl. ¶ 26. Hollaback! sent Roberts a check for $200 for a "PSA" on November 26, 2014. Am. Compl. ¶ 27. Roberts had not requested the check and did not intend to accept it as full compensation. Am. Compl. ¶ 27.

In February 2015, without Roberts' knowledge, Bliss licensed 10 Hours to Made Movement, an advertising agency based in Colorado, which used the video to create an advertisement for TGI Friday's, a New York corporation with its principal place of business in Texas. Am. Compl. ¶¶ 12, 13, 33. The license agreement "represented that [Bliss] had the 'sole right and authority' to grant all rights to the Video, including the right to use all images in it." Am. Compl. ¶¶ 33, 34. Made Movement created a fifteen-second version and a thirty-second version of the advertisement. *See* Am. Compl. ¶ 34 (incorporating by reference Laura Stampler, *People Are Not Happy About TGI Friday's Viral Catcalling Parody*, Time (March 13, 2015), http://time.com/3744418/tgi-fridays-catcalling-parody/); Decl. of Craig B. Whitney, Ex. A. The advertisement uses parts of the 10 Hours video, including background images of New York City streets, and the catcalls that were directed at Roberts. The ad covers Plaintiff's image with digital

4

renditions of oversized Friday's appetizers, including mozzarella sticks, potato skins, and pot stickers.

A few screen shots of stills from the videos show the comparison between 10 hours and the advertisement:





5

Case 1:15-cv-10167-RA   Document 62   Filed 01/24/17   Page 6 of 19





6

Plaintiff alleges that although she "was happy to promote the original video and its message, all of that changed when she suddenly learned that Bliss, Made Movement and TGI Friday's had modified her image by superimposing French fries and mozzarella sticks over her face and using her creation to advertise appetizers in a way that belittled women and the very cause which Plaintiff was promoting." Am. Compl. ¶ 32. Roberts further alleges that "a very substantial number of consumers were led to believe or understood that plaintiff had authorized TGI Friday's to use her persona and creative content to advertise their appetizers, that she approved of the message contained in the ads and that she implicitly endorsed TGI Friday's appetizers." Am. Compl. ¶ 35.

## II.     STANDARD OF REVIEW

To survive a motion to dismiss, a plaintiff must plead "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Although a Court must accept a complaint's allegations as true, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)).

"[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (quotation marks omitted). "If a document relied on in the complaint contradicts allegations in the complaint, the document, not the

7

allegations, control, and the court need not accept the allegations in the complaint as true." *Poindexter v. EMI Record Grp. Inc.*, No. 11 CIV. 559, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012); *see Int'l Audiotext Network, Inc*, 62 F.3d at 72. The Complaint incorporates 10 Hours, Am Compl. ¶ 22, the advertisement, Am. Compl. ¶ 34, and the video license agreement between Bliss, Made Movement, and TGI Friday's, Am. Compl. Ex. A, and the Court considers them on this motion.

### III. DISCUSSION

#### A. Lanham Act Claim: Section 43(a)

Roberts alleges that "TGI Friday's advertisements depicted Plaintiff's persona and conveyed the false impression to a substantial group of viewers thereof that she had participated in, authorized or endorsed the advertisements. Plaintiff did not license her identity and persona for the use in the TGI Friday's advertisements and would never have done so as she disagrees with their objectionable content." Am. Compl. ¶ 46. Plaintiff's Lanham Act claim fails because neither she, nor any representation of her, her image, or her persona, appear in the TGI Friday's advertisement, and the ad contains no false or misleading statement suggesting that she endorsed TGI Friday's or its appetizers. Roberts' claim also fails because she does not plausibly allege that consumers would be likely to be confused as to her sponsorship; the advertisement is a clear parody of 10 Hours, and in no way suggests that Roberts was championing the product used to mock the video for its own commercial benefit.

The Lanham Act prohibits:

> uses in commerce [of] any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false

8

or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]

15 U.S.C. § 1125(a)(1).

"The elements of a false endorsement claim under the Lanham Act are that the defendant, (1) in commerce, (2) made a false or misleading representation of fact (3) in connection with goods or services (4) that is likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services." *Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 455 (S.D.N.Y. 2008). The false or misleading representation of fact, in the context of a false endorsement claim, may involve the misleading implication that a celebrity or public figure endorses a product, when she does not. *See Beastie Boys v. Monster Energy Co.*, 66 F. Supp. 3d 424, 448 (S.D.N.Y. 2014); *Allen v. Nat'l Video, Inc.*, 610 F. Supp. 612, 626 (S.D.N.Y. 1985) ("The Act's prohibitions . . . have been held to apply to misleading statements that a product or service has been endorsed by a public figure."). An entity can make the false or misleading representation that a celebrity endorses a product by using that celebrity's image or persona. *See e.g., Bruce Lee Enterprises, LLC v. A.V.E.L.A., Inc.*, No. 10 CIV. 2333, 2011 WL 1327137, at *4 (S.D.N.Y. Mar. 31, 2011) ("Courts have recognized false endorsement claims under § 43(a) of the Lanham Act where a celebrity's image or persona is used in association with a product so as to imply that the celebrity endorses the product." (quotation marks omitted)).

9

### 1. False or Misleading Representation of Fact

Roberts claims that her image or persona is used in the advertisement to falsely imply that she endorsed TGI Friday's and its appetizers. Although the ad may well call to a viewer's mind the 10 Hours video, and perhaps even Roberts because of her role in it, the ad does not use Roberts' image or persona, nor suggest in any way that Roberts herself endorsed the product advertised.

Plaintiff describes the video as including "her identifiable image (albeit masked)," Pl.'s Opp. to Made Movement & TGI Friday's at 10, her "moving image," *id.*, and her "in a costume," *id.* at 5. Those allegations are belied by the advertisement itself, which is incorporated by reference into the Complaint, and the Court does not accept them as true. *See Poindexter*, 2012 WL 1027639, at *2. The Court finds that Plaintiff's image is not used, as the superimposed renderings of appetizers cover her entire body.[3]

Whether Plaintiff plausibly alleges that her "persona" is used by the advertisement is a somewhat more complicated question. A "persona" includes more than an individual's image. "Persona" is defined as "the aspect of a person's character that is displayed to or perceived by others." *OED Online*, Oxford University Press (Dec. 2016), http://www.oed.com/view/Entry/141478?redirectedFrom=persona; *see also* Merriam-Webster.com, Merriam-Webster (last visited Jan. 19, 2017), https://www.merriam-

---

[3] For the first time, Plaintiff's counsel alleges in the opposition papers that he has personal knowledge that in other versions of the advertisement, Roberts' "feet and hands were actually visible," Pl.'s Opp. to Made Movement & TGI Friday's at 6 n.2. Even if the Court were to accept this fact as true, it would not change the analysis. Plaintiff's request for leave to amend the complaint to allege this fact is thus denied, as the proposed amendment would be futile. *Health–Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990).

10

webster.com/dictionary/persona (defining "persona" as "the personality that a person (as an actor or politician) projects in public"). Courts have held that "persona" includes an artist's distinctive voice and style, *see Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1111 (9th Cir. 1992), and an individual's style and stance in the context that made her famous, *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1396, 1401 (9th Cir. 1992), *as amended* (Aug. 19, 1992). *But see Oliveira v. Frito-Lay, Inc.*, 251 F.3d 56, 62 (2d Cir. 2001) ("The use of [plaintiff's] recorded song has not taken her persona.").

The use of a representation of a celebrity's image or persona, even if the celebrity herself is not captured, may be enough to state a claim because "even if the public does not believe that plaintiff actually appeared . . . it may be led to believe by the intentional reference to plaintiff that he is somehow involved in or approves of their product. This broader standard is justified since the Lanham Act seeks to protect not just plaintiff's property interest in his face, but the public's interest in avoiding deception." *Allen*, 610 F. Supp. at 628–29. "[T]here are instances in which courts have protected the 'persona' of an artist against false implication of endorsement generally resulting from use of look-alikes or sound-alikes." *Oliveira*, 251 F.3d at 62. For example, in *White v. Samsung Electronics America, Inc.*, the Ninth Circuit held that a robot, dressed in a wig, gown, and jewelry designed to resemble Vanna White's hair and dress, which was posed in a stance for which White is famous, next to a game board recognizable as the Wheel of Fortune game show set, stated a claim for false endorsement. *See White*, 971 F.2d at 1396, 1401; *see also Burck*, 571 F. Supp. 2d at 456 (finding it was plausibly alleged that a blue cartoon M & M dressed like plaintiff's street performance character, The Naked Cowboy, implied, falsely, that The Naked

11

Cowboy endorsed the M & M product.).

It may also be that the use of an individual's distinctive movements replicated in the context that made her famous could form the basis of a false endorsement claim, as distinctive movements, such as Michael Jackson's moonwalk, like a distinctive voice, may convey an individual's persona. *Cf. Pesina v. Midway Mfg. Co.*, 948 F. Supp. 40, 41–42 (N.D. Ill. 1996) (granting summary judgment to game manufacturers who used videotape of the movements of plaintiff martial artist to create game character because his movements were extensively altered).  But Roberts has not stated such a claim because she does not plausibly allege that her movements are so distinctive that she is identified by them.  Indeed, the 10 Hours video appears designed to highlight the unsolicited attention received not by any one woman in particular but by women generally.

Nor does the video contain any other suggestion that Roberts endorsed the ad.  Because of the superimposition of the giant appetizers, Roberts is not pictured or represented in the ad at all. Whether or not the ad evokes Roberts in some way, it is insufficient to state a Lanham Act claim; it is simply not plausible that an advertisement that does not contain even a reference to an identifiable characteristic of Roberts nonetheless conveys that she was "somehow involved in or approve[d] of" it. *Allen*, 610 F. Supp. at 629.

To the extent Plaintiff relies on an allegation that she is so associated with her "performance" in 10 Hours, which she "helped to create," Pl.'s Opp. to Made Movement & TGI Friday's at 10, that the ad's use of the video itself falsely implies that she endorsed the product in the ad, her claim fails for the additional reason that the Second Circuit has rejected the contention that a "signature performance" can state a Lanham Act claim. *See Oliveira*, 251 F.3d at 62.  In

*Oliveira v. Frito-Lay, Inc.*, the Court explained that a "signature performance" is that which a "widespread audience associates with the performing artist," and observed that "[m]any famous artists have recorded such signature performances that their audiences identify with the performer." *Id.* But the Circuit there declined to extend trademark protection to artists for their signature performances, concluding that it "would be profoundly disruptive to commerce" because it would "upset[] reasonable commercial expectations" of entities that had paid "bona fide license fees to all known holders of rights." *Id.* at 63; *see EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 63 (2d Cir. 2000) (Trademark law "does not protect the content of a creative work of artistic expression as a trademark for itself. Copyright law protects the artist's right in an abstract design or other creative work.").

In *Oliveira*, defendants paid more than $200,000 to purchase a license to use the master recording of Oliveira's (who is professionally known as Astrud Gilberto) world-renowned 1964 recording of "The Girl from Ipanema," for which she won a Grammy award. 251 F.3d at 58–59. Oliveira argued that "she has become known as The Girl from Ipanema and is identified by the public with the 1964 Recording," so the use of the song in an advertisement for Baked Lays chips falsely implied that she endorsed that product. *Id.* at 59. As noted above, the Circuit rejected that claim. Like Oliveira, Plaintiff here argues that "many viewers of the ad" would identify her from the performance for which she is best known—the 10 Hours video. *See* Pl.'s Opp. to Made Movement & TGI Friday's at 10–11. In addition, like the defendant in *Oliveira*, Made Movement and TGI Friday's purchased a license from Bliss to use the 10 Hours video. *See* Am. Compl. Ex. A. To the extent Roberts is thus arguing that her endorsement is falsely implied by the use of the

13

10 Hours video in the ad, she cannot state such a claim under the Lanham Act. *See Oliveira*, 251 F.3d at 62.

### 2. Likelihood of Consumer Confusion

Roberts' Lanham Act claim also fails because she does not plausibly allege that consumers are likely to be confused or misled into thinking that she endorsed TGI Friday's or its appetizers. "Normally, the likelihood of confusion is a factual question, centering on the probable reactions of prospective purchasers of the parties' goods." *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 584 (2d Cir. 1990). But where Plaintiff "cannot possibly show confusion as to source or sponsorship" claims can be dismissed as a matter of law. *Id.* at 585 (holding that "an ordinarily prudent purchaser would have no difficulty discerning that [the use of Babe Ruth's photographs in a calendar] are merely the subject matter of the calendar and do not in any way indicate sponsorship. No reasonable jury could find likelihood of confusion."); *see also Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 116 (2d Cir. 1984) ("[C]ourts retain an important authority to monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determination whether there is a likelihood of confusion." (quotation marks omitted)). "In the context of a motion to dismiss, courts have disposed of trademark claims where simply looking at the work itself, and the context in which it appears, demonstrates how implausible it is that a viewer will be confused into believing that the plaintiff endorsed the defendant's work." *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 183 (S.D.N.Y. 2012); *see also Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 635 (S.D.N.Y. 2008) (granting motion to dismiss because it is "simply not plausible" that the appearance of plaintiff's

14

"trademark in the Film would confuse ordinarily prudent consumers as to the sponsorship or affiliation of its pinball machines").

"That a trademark is being parodied may be 'clear enough to result in no confusion under the statutory likelihood of confusion analysis.'" *Burck*, 571 F. Supp. 2d at 455 (quoting *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 416 (S.D.N.Y.2002)). In the context of trademark law, "'parody' is a way of arguing that there will be no trademark infringement because there will be no likelihood of confusion. The parodist argues that the ordinary viewer will not be deceived or confused: she will see that the defendant's use is just making fun of the plaintiff's trademark or its owner." 6 *McCarthy on Trademarks and Unfair Competition* § 31:153 (4th ed. Dec. 2016) (hereinafter *McCarthy*). When a parody is clear, "the parodist is not trading on the good will of the trademark owner to market its own goods; the parodist's sole purpose for using the mark is the parody itself, and precisely for that reason, the risk of consumer confusion is at its lowest." *Tommy Hilfiger Licensing, Inc.*, 221 F. Supp. 2d at 414 (granting summary judgment to maker of parody pet cologne "Timmy Holedigger" because the "obvious parody or pun, readily so perceived, [is] unlikely to cause confusion among consumers"). "When satire or parody is taken to a certain degree therefore, it becomes clear that the owner of the trademark was not involved in the manufacture or sponsorship of the defendant's product." *Schieffelin & Co. v. Jack Co. of Boca*, 725 F. Supp. 1314, 1324 (S.D.N.Y. 1989); *see also Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 505 (2d Cir. 1996) (holding that the Muppet puppet "Spa'am" was an obvious parody of the luncheon meat SPAM and thus not likely to cause consumer confusion).

Although a parody may necessarily call to mind the original work, that is insufficient to state a Lanham Act claim because "'[c]onfusion' and '[c]all to [m]ind' [a]re [d]ifferent [m]ental [s]tates." *McCarthy* § 23:9; *see Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Grp., Inc.*, 886 F.2d 490, 494 (2d Cir. 1989) ("A parody must convey two simultaneous—and contradictory—messages: that it is the original, but also that it is *not* the original and is instead a parody."); *Application of Ferrero*, 479 F.2d 1395, 1397 (C.C.P.A. 1973) ("The fact that one mark may bring another mark to mind does not in itself establish likelihood of confusion as to source. The very fact of calling to mind may indicate that the mind is distinguishing, rather than being confused by, two marks." (citation omitted)). In *N.Y. Stock Exchange, Inc. v. N.Y., N.Y. Hotel LLC*, for example, the Second Circuit affirmed the granting of summary judgment for defendants where "[t]he Casino's Internet web site and brochures exhibit versions of NYSE's marks that are so obviously modified that any viewer would understand that the Casino was engaged in a parody or humorous play on words." 293 F.3d 550, 555 (2d Cir. 2002). In contrast, in *Schieffelin & Co. v. Jack Co. of Boca*, the court concluded that consumer confusion was plausibly alleged because defendant's product, "Dom Popignon" popcorn, "is not so outlandish as to distinguish itself from plaintiff's [Dom Perignon] champagne" where popcorn was packaged in a champagne bottle of similar proportions, with a label of identical shape and color, to Dom Perignon. 725 F. Supp. at 1316, 1324.

Plaintiff here has not plausibly alleged that the advertisement creates consumer confusion because any viewer would understand the ad to be engaged in a parody of 10 Hours. While the advertisement does "call to mind" 10 Hours, the supplantation of Roberts with large gimmicky

16

images of appetizers is an "obvious[] modification" of, *N.Y. Stock Exch., Inc.*, 293 F.3d at 555, and a "conscious departure" from, *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 2016 WL 7436489, at *1 (2d Cir. Dec. 22, 2016), the original work. This modification, moreover, is outlandish, not subtle. *See Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962, 972 (C.D. Cal. 2007) ("[T]he more distasteful and bizarre the parody, the less likely the public is to mistakenly think that the trademark owner has sponsored or approved it."). The ad replaces Roberts—the object of the harassing men's attention in the 10 Hours video—with the appetizers. They are now the subject of the men's desire. That, together with the play on words between "appcalling" and "catcalling," is what makes it a parody. And because the parody is obvious, the "risk of consumer confusion is at its lowest." *Tommy Hilfiger Licensing, Inc.*, 221 F. Supp. 2d at 414. The ad uses the fact that it is both similar to 10 Hours in some respects and completely different from it in others, in an apparent attempt—successful or not—at humor. *See McCarthy* § 31:153 ("If the difference in wording or appearance of the accused . . . together with the context and overall setting is such as to convey to the ordinary viewer that this is a joke, not the real thing, then confusion as to source, sponsorship, affiliation, or connection is unlikely."). That Roberts, of course, looks nothing like the overblown images of walking food, and that an online video designed to highlight a societal ill and a chain restaurant attempting to promote its appetizers occupy distinct merchandising markets, reinforces the conclusion that it is implausible that a viewer of the ad would be confused about whether Roberts endorsed it.

Courts in the Second Circuit are generally guided by the non-exclusive eight-factor *Polaroid* test in determining whether there is a likelihood of confusion between marks. *See*

17

*Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961); *see also N.Y. Stock Exch., Inc.*, 293 F.3d at 555. But even when applying the *Polaroid* factors, "a court should focus on the ultimate question of whether consumers are likely to be confused." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 119 (2d Cir. 2001) (quotation marks omitted). For the reasons stated above, the Court finds that it is implausible that a viewer would be confused as to whether Roberts endorsed the ad, and it thus need not "slavishly recite the litany of all eight *Polaroid* factors." *Orient Exp. Trading Co. v. Federated Dep't Stores, Inc.*, 842 F.2d 650, 654 (2d Cir. 1988).[4]

## B. State Law Claims

Plaintiff also brings claims under New York State law for breach of contract and covenant of good faith and fair dealing, violation of NY Civil Rights Law Sections 50–51, violation of the right of publicity, quantum meruit, and unjust enrichment. Am. Compl. 11–16. Because the only federal law claim justifying federal jurisdiction is dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims at this early stage in the case, where there has been no significant activity aside from the Court's consideration of the instant motions

---

[4] Courts differ as to whether it is even appropriate to consider the Polaroid factors on a motions to dismiss. *Compare Eliya, Inc. v. Kohl's Dep't Stores*, No. 06 CIV. 195, 2006 WL 2645196, at *3 n.2 (S.D.N.Y. Sept. 13, 2006) ("[A]n application of the so-called *Polaroid* factors on [a] motion to dismiss" will ordinarily "be inappropriate because it would involve premature factfinding," especially given that "[t]here is no requirement that a plaintiff address the *Polaroid* factors in its pleading"), *with Cintas Corp. v. Unite Here*, 355 F. App'x 508, 510 (2d Cir. 2009) (affirming district court's decision to grant motion to dismiss to defendant after considering the *Polaroid* factors because "plaintiffs' allegations were insufficient to assert a plausible claim that defendant's use of [Cintas's] mark is likely to cause confusion" (quotation marks omitted)), *and deVere Grp. GmbH v. Opinion Corp.*, 877 F. Supp. 2d 67, 69, 73 (E.D.N.Y. 2012) (granting motion to dismiss after applying the *Polaroid* factors because "there is no likelihood that a consumer visiting PissedConsumer.com would mistakenly believe that deVere sponsored or approved the contents of that website," which invites consumers to post reviews and criticism of businesses, including deVere). Whether the Court considers the factors or not, the ultimate conclusion remains the same: there is no likelihood of confusion as to the Plaintiff's endorsement of TGI Friday's or its appetizers.

18

to dismiss. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction"); *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." (*quoting Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also Klein & Co. Futures v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.").

## IV.  CONCLUSION

The Defendants' motions to dismiss Plaintiff's Lanham Act claim are granted. Plaintiff's state law claims are dismissed without prejudice, and she has the option to replead them in the New York State courts.

The Clerk of the Court is respectfully requested to close the motions pending at Docket Numbers 37 and 43 and close the case.

SO ORDERED.

January 24, 2017
New York, New York

Ronnie Abrams
United States District Judge